Catkon, Ch. J.
delivered the opinion of the court.
The court is again called upon to say what the effect of the plea of non-assumpsit is in cases where endorsers of a note are sued, and the plea is not sworn to as required by the act of 1819, ch. 42.
The act declares no endorser of a note or endorser of *484 a bond, shall plead any plea denying directly or indirectly such endorsement, unless the plea is accompanied with an affidavit of the truth thereof and subscribed by the party.
In this State we have two descriptions of negotiable notes, one a bill single with a seal, and the other an undertaking in the same form but without a scroll to it. If the former before the passage of the act of 1819 was sued upon the obligor could not plead non est factum, but upon oath; every other plea admitted the execution of the instrument. No reason could be imagined save immemorial usage, why a scroll should give dignity to the the paper. When an actual seal was affixed there was in fact a great difference, as in England where the seals and armorial bearings of families were generally known and hardly capable of being counterfeited; and this continues to be the case in that country. The Legislature of this State believing that to require proof of the execution of an instrument not having a scroll to it, incumbered the ‘administration of justice without cause where the maker of the instrument would not deny it on oath, dispensed with such proof. But i t often happened that although this fact was undisputed, yet that demand had been made of the maker, and notice given to the endorser, was most seriously litigated, and must be put in issue. Then again, in very many cases growing out of the failures of 1819, usury was relied upon as a defence. It soon became a question with the bar how these defences should be made: as to signing or endorsing the paper, not one in a thousand disputed that, but to be driven to a special plea that demand was not made, or that notice was not given, or that usury had been taken, and how much, was most inconvenient, and in case usury was the matter of defence, and very often it was, to prove the plea precisely to meet the proof was next to impossible. The consequence was, the old defence and general issue of non-assumpsit was adhered to. The plea was filed not on oath, and no *485 the trial the courts ruled, and most correctly, that the plea did not apply to a denial ol the making of the note or its endorsement; that these were admitted but that the other defences could be made under the plea. If the suit was upon the note against the maker, no proof was required on part of the plaintiff, if the plea of non-assump-sit was filed, the defendant was holden to admit the prima facie cause of action, as if payment had been pleaded to an action of debt upon a bill single; and so when an endorser was sued, no proof was required but demand and notice to fix him. The existence of the paper as described in the declaration was admitted by the plea, and to-establish the demand and notice, it furnished no evidence if produced, and therefore its production became unnecessary upon the trial. The same legislature, (1819 ch. 48,) declared that the protestation of Notaries Public should be evidence. This however not-being sufficiently explicit, at the next session, (1820, ch. 25, sec. 4,) it was enacted that the protest of the Notary of nonacceptance, or non-payment of negotiable paper, and his certificate that he had given notice to the endorsers, should be prima facie evidence of the fact of notice, as well as of demand. The note was copied out in the protest and given in that form in evidence in this cause; and which protest was sufficient evidence of demand and notice. It was precise in its character, and the production of the original note could not have been of the least aid to the jury.
The second objection is, that the note had two endorsements, and that the plaintiff also put his name on the paper when he deposited it in the United States Bank where it was payable. The endorsements were all in blank up to the trial when the two first were filled up, the second of course to the plaintiff. It is insisted the third endorsement vested the title of the note in the Bank. Mr. Chaffin proves the rule of the Bank is to require of those who deposite notes there for collection to en *486 dorse their names on them, and for the very plain reason that if the note is paid, the Bank must know who is the owner, as she is not. To the last endorser the Bank pays the money, and to him if the payment is not made, the note is returned. Had the Bank discounted the paper and the last endorser been compelled to take it up, an , occurrence of every day, no necessity rested on him to prove the want of integrity and failure to pay of the maker and previous endorsers, his having possession of the paper would be sufficient to authorise him to fill up any previous endorsement to himself on the trial of the cause and strike out subsequent or intermediate ones. Chitty ons Bill 370. The plaintiffs right to sue was clear both upon the fact that the Bank have had title, and upon the law grounded on the prima facie evidence of title, that the possession confers on the holder of negotiable paper endorsed in blank or payable to bearer. These being the-only objections to the proceedings below, the judgment must be affirmed.
Judgment affirmed.